James Earl WARREN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 26277.

United States Court of Appeals, Ninth Circuit.

Aug. 13, 1971.

Robert J. Hirsh, of Messing & Hirsh, Tucson, Ariz., for appellant.

Richard K. Burke, U. S. Atty., Stanley L. Patchell, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLEY, Circuit Judge,* and KELLEHER, District Judge.**

KELLEHER, District Judge:

Warren appeals from his conviction after trial by jury of two counts charging violation of the National Firearms Act; possessing a firearm unregistered

---

\* The parties agreed that, Circuit Judge Wright being ill and hence absent on the day set for oral argument, the case might be submitted to and decided by Judges Hamley and Kelleher.

\*\* Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

to him in violation of 26 U.S.C. § 5861(d) and possessing a firearm not bearing a required serial number in violation of 26 U.S.C. § 5861(i).

Appellant claims error in the Court below by reason of the admission in evidence of, (1) the firearm, a sawed off shotgun which, by pre-trial motion, he sought to have suppressed and as to which on trial he made timely objection, and (2) documentary evidence of non-registration received over his objection that such mode of proof deprived him of his constitutional rights under the Sixth Amendment to confrontation of witnesses against him. Additionally, appellant claims his prosecution under the gun control statutes here involved constitutes a violation of his Fifth Amendment right against self-incrimination. He contends further that with respect to the element of intent there was error below in the quantum of proof adduced and in the instructions given and refused on this issue.

We have considered and discuss below each of appellant's specifications of error; we find none has merit.

1. *The Search of the automobile and Seizure of the weapon.*

The police officer who made the search of appellant's automobile and seized therefrom the sawed off shotgun in question testified that at about 2:25 a. m. he stopped appellant's vehicle to issue its driver a citation for travelling in excess of the legal speed limit; that before the car stopped he observed one of the two passengers therein apparently placing something under the seat; that, thereafter, upon looking into the stopped vehicle from the outside and not entering therein, the officer observed a partially concealed but, nevertheless, partly visible handle of a butcher knife; that in the course of removing the butcher knife he observed the shotgun under the right side of the front seat. Thereby, the officer had probable cause to believe there had been a violation of the State law prohibiting one from having on or about his person a concealed weapon (defined in the statute to include "any kind of knife"). Ariz.Rev.Stat. § 13–911. Hence, there was a double justification for the search, viz., (1) the car was lawfully stopped for a traffic violation rendering properly seizable that which was in plain view. United States v. Crow, 439 F.2d 1193 (9 Cir. 1971); United States v. Oswald, 414 F.2d 44 (9 Cir. 1971); see Ker v. California, 374 U.S. 23, 43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Buick v. United States (9 Cir. 1968), 396 F.2d 912, and (2) as was said in United States v. Thompson (3 Cir. 1970), 420 F.2d 536, at 540:

> "The Supreme Court has made it clear that a law enforcement officer, when he justifiably believes that the individual he is investigating at close range is armed, has the power for his own protection to take necessary measures to determine whether that person is in fact carrying a weapon."

citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). And, further, as was said in *Thompson, supra,* 420 F.2d at p. 541:

> "This search, therefore, fell within the doctrine that police officers, for their own protection or as fruits of an offense, may take possession of weapons found in the possession of the accused, either on his person or within his immediate control."

Accordingly, we find ample support in the record for the search, seizure and admission into evidence of the sawed off shotgun.

2. *The use of documentary evidence to prove non-registration of the weapon.*

At the trial a special agent of the Alcohol, Tobacco and Firearms Division, Internal Revenue Service, testified he had requested a records check on the gun in question to be made by the Division's Washington, D.C. office; over objection by appellant, the agent identified a document bearing a government

seal and the signature of the Assistant Chief of the Division's Operations-Coordination Section, and this document was received in evidence pursuant to Federal Rules of Criminal Procedure, Rule 27. A second page of the document, signed by one Caine, another official of the Division, stated that the declarant was the Firearms Enforcement Officer, Enforcement Branch of the Division, that he had custody of the National Firearms Registration and Transfer Record and that after a diligent search of said record, the declarant had found no evidence that a gun matching the description of the gun seized from appellant was registered pursuant to 26 U.S.C. § 5841. See 26 C.F.R. § 179.120 (January 1, 1971). No other evidence was offered to show that appellant's gun was not registered.

 Arguing that documentary evidence may not be used pursuant to Rule 27 of the Federal Rules of Criminal Procedure, absent the unavailability of the declarant or other showing of necessity, appellant contends that the introduction of the documents to prove lack of registration violated his right of confrontation under the Sixth Amendment and deprived his counsel of an opportunity to examine the declarant personally to determine the extent and scope of the records check and, thereby, the trustworthiness of the declaration.

Appellant appears not to argue that the usual requirements of the official records exception to the hearsay rule were not met herein, but rather that Rule 27 of the Federal Rules of Criminal Procedure, by authorizing use of an official document to prove non-registration, an essential element of the crime under 26 U.S.C. § 5861(d), is unconstitutional. The alternative, of course, would be to require the declarant, the official conducting the records check, and perhaps every employee of the Records Division who might have received a registration for filing, to testify in person. Not only would such a procedure defeat the goal of administrative convenience which Rule 27 seeks to foster [5 Wigmore, Evidence § 1631 (3d ed. 1940) at p. 513], but it would appear is unnecessary since a probability of trustworthiness is found in the official's duty to maintain accurate records, ibid. § 1632 at p. 514.

In La Porte v. United States, 300 F.2d 878 (9 Cir. 1962), we held that a document prepared by an employee of the Los Angeles Department of Charities, stating that defendant did not report for his civilian work assignment, was admissible under 28 U.S.C. §§ 1732, 1733, to prove the essential element of the crime, viz., defendant's failure to report for alternative service under the Selective Service Act. Moreover, we have held that it was not error for the trial court to refuse to allow appellant to search through voluminous export records to test the accuracy of testimony by customs officials that certain documents which appellant was required to file did not, in fact, exist. De Casaus v. United States, 250 F.2d 150, 152, 153 (9 Cir. 1957), cert. denied, 356 U.S. 949, 78 S.Ct. 914, 2 L.Ed.2d 243 (1958). These decisions establish, and the Sixth Amendment appears to embody, exceptions to the hearsay rule not inconsistent with the purposes of that Amendment. See 5 Wigmore, Evidence § 1397 (3d ed. 1940) at p. 131. Hence, the Sixth Amendment does not apply to exclude evidence otherwise admissible under Rule 27. This exception to the hearsay rule is supported both by administrative necessity and by the trustworthiness arising from the fact that the declarant has a legally enforceable duty to maintain accurate records. United States v. Thompson, 420 F.2d 536 (3 Cir. 1970); T'Kach v. United States, 242 F.2d 937 (5 Cir. 1957); Mathews v. United States, 217 F.2d 409 (5 Cir. 1954); Heike v. United States, 192 F. 83 (2 Cir. 1911).

Accordingly, we find that admission of the Caine declaration in no way denied appellant the right to confront witnesses as guaranteed by the Sixth Amendment.

3. *The self-incrimination question under the Fifth Amendment.*

██ Appellant claims error because, he asserts, the statutes here involved require him to register the firearm, which might incriminate him, or, failing to do so, to risk prosecution. His claim that the statutes as applied to him violates his rights under the Fifth Amendment is ill founded and without substance.

In United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (April 5, 1971), the Supreme Court noted the safeguards against prosecutorial or investigative use of evidence provided in compliance with the National Firearms Act of 1968, and held that the transferee of an unregistered gun is not compelled to incriminate himself by complying with the Act since it imposes the duty to register on the transferor, not the transferee-possessor. In addition, the possessor of a weapon unregistered or lacking a serial number was afforded an opportunity immediately after the effective date of the National Firearms Act, to register and obtain a serial number and was granted immunity from prosecution in connection therewith under regulations promulgated by the Secretary of the Treasury. See 26 C.F.R. § 179.200–201.

Accordingly, we find no Fifth Amendment infirmity in the Act nor in its application here. Nor do we believe that appellant is aided by our decision in Gott v. United States, 432 F.2d 45, 46 (9 Cir. 1970). There we held that unless the unregistered firearm was made or transferred subsequent to the effective date of the Act (i. e., November 1, 1968) possession of the firearm could not have been in violation of 26 U.S.C. § 5861(c) which prohibits receipt or transfer of a firearm made in violation of 26 U.S.C. § 5822. Unlike 26 U.S.C. § 5861(c), subsection (d) thereof, with which appellant was charged, merely makes unlawful possession or receipt of an unregistered firearm, and says nothing about whether the gun was made in violation of the Act. The National Firearms Act, in the form existing before enactment of the revised statute here involved, required the possessor to register the firearm. The present Act recognizes such prior registration as compliance with the registration requirement of the Act here involved. Therefore, appellant cannot be heard to complain that he could not have registered the gun had he acquired it prior to the effective date of the 1968 legislation. The Supreme Court's decision in Haynes v. United States, 390 U.S. 85, 99, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), merely struck those portions of the prior law which made non-registration a crime but did not relieve appellant of the duty to register, nor does the offense of 26 U.S.C. § 5861(d) require proof that the firearm was acquired after enactment of the present registration statute.

4. *Intent as an element of the offense.*

██ Appellant claims error in the failure of the Government to prove that he had knowledge of the fact that the weapon was not registered and had no serial number and, further, that there was error in the failure to instruct the jury that unlawful intent to violate the law was required. This contention is wholly disposed of by United States v. Freed, *supra.*

For all the foregoing reasons, the Judgment is affirmed.